UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Blue Water Importers, Inc., et al.,            Case No. 3:16-cv-02477

         Plaintiffs,

     v.                                            MEMORANDUM OPINION
                                                                    AND ORDER

John Born, et al.,

         Defendants.

## I. INTRODUCTION

Plaintiffs Blue Water Importers, Inc., Deux Rives Chrysler Dodge Jeep Ram, Inc., and Scarsview Motors, Ltd., challenge certain policies and practices applicable to the issuance of certificates of title for preowned motor vehicles which were manufactured for first sale outside of the United States. Plaintiffs filed suit against Defendants John Born, in his official capacity as Director of the Ohio Department of Public Safety; Don Petit, in his official capacity as Registrar of the Ohio Bureau of Motor Vehicles (jointly, the "State Defendants"); Lucas County, Ohio Clerk of Court J. Bernie Quilter; Wood County, Ohio Clerk of Court Cindy Hofner; and Muskingum County, Ohio Clerk of Court Todd A. Bickle (jointly, the "Clerks of Court"), asserting Plaintiffs are entitled to injunctive relief. Each of the Defendants have filed motions to dismiss. For the reasons stated below, the motion of Defendants Born and Petit is denied and the motions of Defendants Quilter, Hofner, and Bickle are granted.

## II. BACKGROUND

Plaintiffs import pre-owned motor vehicles from Canada for re-sale in the United States. The importing process is overseen by several federal agencies, including the National Highway Traffic Safety Administration ("NHTSA"), and vehicles which are imported must comply or be made to comply with applicable federal laws and regulations. Plaintiffs assert that – through the policies of the BMV and the Department of Public Safety, and the practices of the various county officials responsible for issuing certificates of title for imported vehicles to be sold in Ohio – the State of Ohio improperly interferes with the federal regulatory scheme and violates the Commerce Clause's protections of interstate and foreign commerce.

Among other conditions, motor vehicles imported into the United States must comply with, or be made to comply with, Federal Motor Vehicle Safety Standards ("FMVSS"). Canada has implemented substantially-similar standards, and vehicles manufactured for initial sale in the Canadian market often require only very minor alterations before those vehicles fully comply with the FMVSS. (Doc. No. 13 at 9). Entities like Blue Water – which has registered as an importer with the NHTSA (a "Registered Importer") – post bonds to ensure an imported vehicle will be brought into compliance with the FMVSS or that the cost of exporting noncompliant vehicles can be paid out of the bond. (Doc. No. 13 at 2); *see also* 49 C.F.R. § 592.6(a). These imported vehicles may not be released into the stream of commerce until at least 30 days pass after the Registered Importer has certified the vehicle's compliance to the NHTSA or the NHTSA issues a letter releasing the bond (the "Bond Release Letter").

Plaintiffs challenge the BMV's alleged requirement that out-of-state entities such as Plaintiffs provide the NHTSA's Bond Release Letter before the BMV will issue a certificate of title. Plaintiffs contend this requirement, as well as the BMV's requirements that imported vehicles be personally inspected on the property of a licensed Ohio automotive dealer and the certificate of title for those

2

vehicles be issued to an individual or entity with an Ohio address, create inequitable burdens on out-of-state parties, in violation of the Commerce Clause.

### III.   STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, the court may consider the allegations in the complaint as well as any exhibits attached to the complaint, as long as the complaint refers to the exhibit and the exhibit is central to the claims set forth in the complaint. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### IV.   ANALYSIS

Born and Petit argue Plaintiffs fail to state a claim for relief because the federal government has not expressly or impliedly "preempted the field of title regulation for imported vehicles," and that Plaintiffs do not allege sufficient facts to support their Dormant and Foreign Commerce Clause claims. (Doc. No. 15 at 2). They also argue part of Plaintiffs' claims are mooted by Title Broadcast 16-1202, which amended the required documentation that applicants must include in their title packets. Each of the Clerks of Court have adopted the State Defendants' arguments, as well as those made by the other Clerks of Court. Bickle argues Plaintiffs lack standing to assert claims against him, and Quilter and Hofner argue they do not have any discretion in performing their duty

3

to review title applications. Plaintiffs contend the Defendants have promulgated policies and engaged in practices which conflict with federal law and which violate the Commerce Clause.

### A. BORN AND PETIT

As an initial matter, I conclude the 2016 change in the State Defendants' announced policy is not sufficient to moot Plaintiffs' challenge to their policy. The BMV uses "official publications known as Title Broadcasts" to provide guidance and instruction to the county offices which are authorized to issue vehicle titles. (Doc. No. 13 at 19). Title Broadcast 15-1016, issued on October 16, 2015, required in part that persons applying for a title must provide the original Bond Release Letter for certain imported vehicles. (Doc. No. 13 at 20-21). On December 2, 2016, a few months after this litigation was initiated, the BMV issued Title Broadcast 16-1202, rescinding Title Broadcast 15-1016 and permitting Ohio title clerks to issue titles if the title applicant provided a copy of the Bond Release Letter or evidence that the vehicle was deemed to be released under the Code of Federal Regulations. (Doc. No. 13 at 21; Doc. No. 33-1 at 1). As Plaintiffs note, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Austin v. Wilkinson*, 502 F. Supp. 2d 660, 666 (N.D. Ohio 2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

As I noted above, the State Defendants insist I should dismiss Plaintiffs' claims because the state requirements are not preempted by federal law. Federal law may preempt state law expressly or impliedly through a statute, by occupying the legislative field, or if the state law actually conflicts with a part or all of a federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). State law may be found to conflict with federal law if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the federal law. *Fidelity Fed. Sav. And Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

4

The federal statutes and regulations governing imported vehicles demonstrate a legislatively-prescribed balance between the societal benefits of automobile safety standards and the economic costs of delaying the entry of imported vehicles into the marketplace. The Ohio requirement that importers provide an original Bond Release Letter interferes with that balance by creating a higher hurdle those importers must clear before offering their goods for sale. Under the challenged policy, importers could fully comply with the requirements of federal law but be unable to obtain an Ohio title due to the state enhancements to the federal standards. *Cf. Direct Auto Imports Ass'n, Inc. v. Townsley*, 804 F.2d 1408, 1415-16 (5th Cir. 1986) ("Since Texas is not impairing the sale of federally certified equipment, but only requiring that such equipment must be federally certified as a precondition to state title, we conclude that Congress demonstrated no clear intent to preempt the Texas statute.").

Plaintiffs assert the restrictions imposed by the State Defendants – through, in particular, Title Broadcast 15-1016 – create a more substantial burden on interstate and foreign commerce than is dictated by federal law in this area. *See, e.g., Sims v. State of Florida*, No. TCA 85-7214-WS, 1985 WL 74, at *6 (N.D. Fla., Dec. 30, 1985) (holding Florida law impermissibly interfered with "the common market of commerce," in violation of the Commerce Clause, by imposing unduly-burdensome titling and registration requirements on imported vehicles). Plaintiffs offer sufficient well-pleaded factual allegations to establish a plausible claim for relief, and I deny the State Defendants' motion to dismiss.

### B. QUILTER, HOFNER, AND BICKLE

Plaintiffs are not entitled to proceed, however, on their claims against the Clerks of Court. The first amended complaint contains allegations of purportedly improper denials of title applications by the Cuyahoga County Fiscal Office, but not by the Offices of the Clerks of Court for Lucas, Wood, or Muskingum Counties. (*See* Doc. No. 13 at 22, 24-25). Allegations that Quilter,

Hofner, and Bickle advocated to the State Defendants for a more-restrictive policy are not sufficient to support an inference that the Clerks of Court had any policy-making authority or that it is reasonable to presume the Clerks of Court in fact have improperly exercised any discretion permitted to their offices.  *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986) ("The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.").  Plaintiffs' allegations do no more than show Quilter, Hofner, and Bickle followed the policies announced by the State of Ohio, whether the Clerks of Court favored one particular policy over another or not.

## V.  CONCLUSION

For the reasons stated above, the motion to dismiss filed by Defendants Born and Petit, (Doc. No. 15), is denied, and the motions to dismiss filed by Defendants Quilter, Hofner, and Bickle, (Docs. No. 29, 32, and 37), are granted.


So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge